UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DAVID A. SILVIA, | : | |
|      Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 20-203-JJM |
| | : | |
| RIPTA RIDE/FLEX PROGRAM, | : | |
|      Defendant. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On May 6, 2020, Plaintiff David A. Silvia filed a *pro se* complaint[1] alleging that the RIPTA Ride/Flex Program's procedure of waiting five minutes ("5-minute wait procedure") for a missing rider and not requiring further investigation to track the missing rider is violative of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* ("ADA"). Plaintiff claims that a driver's failure timely to appear at what he understood to be the assigned pick-up point left him stranded on a 28-degree day. ECF No. 1. His contemporaneously filed motion for leave to proceed *in forma pauperis* ("IFP") has been referred to me for determination pursuant to 28 U.S.C. § 636(b)(1)(A). ECF No. 3. Because Plaintiff has satisfied the requirements of 28 U.S.C. § 1915(a)(1), the IFP motion is provisionally granted. However, because of the IFP application, this case is subject to preliminary screening under 28 U.S.C. § 1915(e)(2)(B).[2]

**I.     BACKGROUND**

---

[1] Courts must be "solicitous of the obstacles that *pro se* litigants face." Silvia v. Raimondo, C.A. No. 17-310-JJM-LDA, 2017 WL 11477124, at *1 (D.R.I. Sept. 29, 2017). Accordingly, I have employed a liberal construction of Plaintiff's filings. See Hughes v. Rowe, 449 U.S. 5, 9 (1980) (per curiam); Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam); Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000).

[2] Frustrated by the passing of time, Plaintiff filed a motion of inquiry (ECF No. 4) regarding why it was taking so long to address his IFP motion. By separate text order, he was advised that the case is subject to screening. See Text Order June 15, 2020.

>Plaintiff's claim (in its entirety) is as follows:
>
>THE FLEX PROGRAM AS PROCEDURES WHICH ALLOW S A 5MIN WINDOW TO BE PI\CKED UP, IF THE RIDER DOES NOT CONNECT, THE VEHICLE LEAVES, WHICH LEAVES THE RIDER (HANDY CAP PERSON ABANDONED) a
>. . .
>AS I have tried to explain the problems/safety concerns of leaving a handicap person abandon, the management refuses to change their procedure, to call the rider to confirm his location or whereabouts.  In my case, the driver was not at the assigned location and left, leaving me abandon on a 28 degree day to go home on my ow..may

ECF No. 1 at 4.  Although the complaint does not allege that Plaintiff is a disabled individual, his IFP application does.[3]  ECF No. 3.  Except as set out above, the pleading does not seek any specific relief.

In naming the RIPTA Ride/Flex Program as a Defendant, Plaintiff is focused on the Rhode Island Public Transit Authority ("RIPTA") and its paratransit division, in that he alleges that he is suing the Ride/Flex Program through, "Brooks Almonte, Director," who is in charge of the RIPTA paratransit program.[4]  According to RIPTA's website,[5] the paratransit program is

---

[3] That Plaintiff is likely a "qualified individual with a disability" pursuant to the ADA, 42 U.S.C. § 12132, is confirmed by a quick survey of the fifteen other cases he has filed in this Court since 2015.  19-544; 19-459; 19-298; 19-142; 18-641; 18-517; 18-408; 18-118; 18-78; 18-63; 17-310; 17-164; 16-399; 16-104; 15-349.  Most of these cases were brought under the ADA.  While the majority of these cases were dismissed for failure to state a claim or as frivolous, either at screening pursuant to 28 U.S.C. § 1915 or on a motion to dismiss, nevertheless, Plaintiff's zealous advocacy has also produced positive outcomes.  For example, in 2017, he sued the Post Office because the door of the Warren office did not facilitate access by a disabled person using a scooter.  17-164.  The Post Office quickly rectified the problem, and Plaintiff voluntarily dismissed the case.  17-164, ECF No. 5.

[4] RIPTA's public website identifies Mr. Almonte as the official in charge of the paratransit division since 2019. https://www.ripta.com/stuff/contentmgr/files/0/bb208e4c4b3f241390e87702ff3245ca/files/atac_approved_meeting_minutes_2019_09_05.pdf (last visited June 18, 2020).  Mr. Almonte is also identified as the person to whom requests for accommodation are to be directed, in compliance with RIPTA's regulatory obligation to make reasonable accommodation to its policies, practice, and procedures and to designate a person to receive requests for accommodation pursuant to 49 C.F.R. § 37.17.  https://www.ripta.com/ada (last visited June 18, 2020).

[5] Because the referenced website is RIPTA's official public site and because the paratransit service and the "5-minute wait procedure" are referenced in the complaint, it is appropriate for the Court to consider the content of the website at screening, just as it would be in connection with a Fed. R. Civ. P. 12(b)(6) motion.  Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (court may consider "official public records; . . . documents central to plaintiffs' claim; [and] . . . documents sufficiently referred to in the complaint"); Galvin v. EMC Mortg. Corp., No.

2

based on the ADA and "is for people with disabilities that prevent the use of fixed-route buses."

https://www.ripta.com/ride-paratransit-program (last visited June 18, 2020).  It "provides door to door service and . . . is a shared ride service."  Id.  The RIPTA website also describes the "5-minute wait procedure" that Plaintiff complains of in his pleading:

> **Driver Wait Time**  To avoid delaying other passengers, drivers can only wait 5 minutes for you.  Please be ready to leave when your driver arrives.

Id.

Pursuant to Title II of ADA, the provision of public transportation services to disabled individuals is governed by detailed regulations and guidance developed by the Federal Transit Authority ("FTA") of the Department of Transportation.[6]  See 42 U.S.C.§ 12134(a); 49 C.F.R. Part 37 (Transportation Services for Individual with Disabilities); Melton v. Dallas Area Rapid Transit, 391 F.3d 669, 673 (5th Cir. 2004) ("[I]t is the Secretary of Transportation who is directed to promulgate regulations to implement part B under 42 U.S.C. § 12149 and specifically to promulgate regulations regarding paratransit service under 42 U.S.C. § 12143(b).").  The development of paratransit services is specifically regulated by 49 C.F.R. § 37.121-155, which regulations contain detailed requirements and suggestions related to facilitating the transportation of disabled riders.  E.g., 49 C.F.R. Pt. 37, App. E ("Five-Minute Warning or Notification of Arrival Calls").  As authorized by 49 C.F.R. § 37.15, the FTA has issued guidance that recommends the use of the precise "5-minute wait procedure" about which Plaintiff complains:

> Many agencies have established a policy requiring drivers to wait at least 5 minutes for riders to board the vehicle after arriving at the pickup address.  In such cases, it is important that such policies also require drivers to wait until the *start* of the pickup window to begin a 5-minute countdown and to wait until the full 5 minutes have elapsed before departing without the rider.  For example,

---

12-CV-320-JL, 2013 WL 1386614, at *12 (D.N.H. Apr. 4, 2013) (court may consider materials referenced in complaint and posted on government agency's official website).

[6] Other aspects of Title II are governed by regulations adopted by the Attorney General.  42 U.S.C. § 12134(a).

> when the pickup window begins at 11 a.m. and the vehicle arrives at 10:55 a.m., the driver would wait for the rider at least until 11:05 a.m. before departing.

U.S. Department of Transportation Federal Transit Administration (Circular FTA C 4710.1) <u>Americans with Disabilities Act (ADA): Guidance</u> § 8.4.5, at 203 (November 4, 2015).[7] This guidance also encourages paratransit agencies to establish effective telephone communication, for example to permit trip-status calls for late pickups. <u>Id.</u> at § 8.5.6.

An individual with a complaint about compliance with the FTA's regulations or the applicable guidance is encouraged to file it first with RIPTA's designated official, Mr. Almonte. 49 C.F.R. § 37.17; <u>see also</u> 28 C.F.R. § 35.107. The procedure is explained on RIPTA's website.[8] If Mr. Almonte is unresponsive (as Plaintiff's pleading suggests), a complaint may be filed directly with the FTA's Office of Civil Rights. 49 C.F.R. § 27.123(b). The FTA has administrative enforcement powers to enforce compliance with its regulations. 28 C.F.R. § 35.190. Instructions for filing such a complaint are on the FTA's website.[9]

## II.     STANDARD OF REVIEW

Section 1915 of Title 28 requires a federal court to dismiss an action if the court determines that the action fails to state a claim. 28 U.S.C. § 1915(e)(2)(B). The standard for dismissal of an action filed *in forma pauperis* is identical to the standard for dismissal on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6). <u>Hodge v. Murphy</u>, 808 F. Supp. 2d 405, 408 (D.R.I. 2011). To survive a motion to dismiss, a complaint must contain sufficient

---

[7] This circular is available at https://www.transit.dot.gov/sites/fta.dot.gov/files/docs/Final_FTA_ADA_Circular_C_4710.1.pdf (last visited June 18, 2020).

[8] RIPTA – RIDE Program "Requests for Reasonable Modification," https://www.ripta.com/stuff/contentmgr/files/0/51faff012335713af56657248f6a1e96/files/requests_for_reasonable_modification__2_.pdf (last visited June 18, 2020).

[9] "File a Complaint with FTA," https://www.transit.dot.gov/regulations-and-guidance/civil-rightsada/file-complaint-fta (last visited June 18, 2020).

factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

### III.   ANALYSIS

Title II of the ADA broadly provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added); see Iverson v. City of Bos., 452 F.3d 94, 99 (1st Cir. 2006). One of the purposes of Title II of the ADA is to guarantee that qualified disabled persons enjoy meaningful access to public transportation services. See Tennessee v. Lane, 541 U.S. 509, 531-32 (2004). The ADA is violated by a public entity that operates a fixed-route transportation system but fails to provide paratransit transportation services to individuals with disabilities who cannot use the fixed-route system; the ADA mandates that the paratransit system must be "comparable to the level of designated public transportation services provided to individuals without disabilities using such system." 42 U.S.C. § 12143(a); see Martin v. Metro. Atlanta Rapid Transit Auth., 225 F. Supp. 2d 1362, 1373 (N.D. Ga. 2002). As part of the implementation plan for the ADA, Congress created a private right of action to enforce it. Ability Ctr. of Greater Toledo v. City of Sandusky, 385 F.3d 901, 906 (6th Cir. 2004).

To state a *prima facie* ADA claim in federal court, in addition to being a "qualified individual with a disability,"[10] a plaintiff must plausibly allege that he was either excluded from participation in or denied the benefit of some public service, program, or activity, and that such

---

[10] For purposes of screening, the Court assumes that Plaintiff is a qualified individual even though that element is omitted from his pleading. See n.3 *supra*.

exclusion, denial of benefits, or other discrimination was "by reason of [his] disability." Iverson, 452 F.3d at 102-03; Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000). Importantly, the ADA does not require public transit agencies to provide better service to disabled passengers than is provided to other passengers, only comparable service. Martin, 225 F. Supp. 2d at 1373-74. At bottom, to qualify as an ADA claim, the exclusion from or denial of service must be "by reason of the individual's disability." Iverson, 452 F.3d at 102; see Melton, 391 F.3d at 671-72 (affirming district court's grant of summary judgment on ADA claim because disabled plaintiff asked for reasonable modification of paratransit service to facilitate his access, but failed to demonstrate that denial of modification amounted to discrimination based on disability).

Plaintiff's pleading should not survive screening because it lacks even a hint from which one might draw the inference that he has been excluded from participation in or denied the benefit of some public service program or activity "by reason of [his] disability." Iverson, 452 F.3d at 102. For example, there is no suggestion that RIPTA has a mechanism for assisting stranded passengers riding the fixed-route buses that it has refused to apply to paratransit service riders. Rather, Plaintiff's complaint is laser-focused on adjusting RIPTA's procedures for implementing the paratransit service – he contends RIPTA does not strike the right balance among the disabled persons using the service in that the "5-minute wait procedure" can leave one disabled person stranded as the bus moves on to pick up another. Reading his *pro se* pleading leniently, the Court assumes that Plaintiff is seeking a modification of RIPTA's procedures through the development of a mechanism to avoid stranding disabled individuals in cold weather, as happened to him in one instance.[11] Pursuant to the applicable regulations, see 49 C.F.R. Pt.

---

[11] Even if Plaintiff plausibly alleged a deviation from the requirements of the FTA regulations (which he has not), he still would fail to state a claim under the ADA. The law is clear that a private plaintiff may not sue to enforce "regulations that interdict a broader swath of conduct than the [ADA] itself prohibits." Iverson, 452 F.3d at 100 (quoting Alexander v. Sandoval, 532 U.S. 275, 286 (2001) ("private rights of action to enforce federal law must be

37, App. E, Plaintiff can bring such a request to Mr. Almonte at RIPTA or he can file it with the FTA. But without facts plausibly establishing a denial of access to public transportation "by reason of [his] disability,"[12] he may not pursue a private right of action based on the ADA in this Court. Iverson, 452 F.3d at 102.

## IV.     CONCLUSION

Based on the foregoing, I recommend that the complaint in its present form be DISMISSED because it fails to state a claim under the ADA. Because it is conceivable that Plaintiff may have omitted "well-pleaded facts," Iqbal, 556 U.S. at 679, sufficient to support a plausible ADA claim, I also recommend that he be afforded leave to replead within thirty days of the Court's adoption of this report and recommendation. See Brown v. Rhode Island, 511 F. App'x 4, 5-7 (1st Cir. 2013). If Plaintiff does not file an amended complaint, or if his amended complaint still fails to state a viable ADA claim, I recommend that the matter be summarily dismissed.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.

---

created by Congress")). That is, when regulations impose detailed requirements on public entities different than, "and beyond," those imposed by the ADA itself, such "regulations may not be enforced through the instrumentality of the private right of action available under Title II." Id. at 102 (emphasis added); accord Abrahams v. MTA Long Island Bus, 644 F.3d 110, 120 & n.7 (2d Cir. 2011); Lonberg v. City of Riverside, 571 F.3d 846, 850-52 (9th Cir. 2009).

[12] Several of Plaintiff's 2018 ADA cases were also dismissed because the pleading alleged "neither exclusion to a program or activity nor intentional discrimination." Silvia v. R.I. Dep't of Transp., C.A. No. 18-78-JJM, ECF No. 18 at 2 (D.R.I. May 1, 2018), aff'd, slip op. (Judgment), No. 18-1414 (1st Cir. Apr. 28, 2020); see also Silvia v. City of Woonsocket, C.A. No. 18-408-JJM, ECF No. 12 at 2 (D.R.I. Sept. 28, 2018), aff'd, slip op. (Judgment) No. 18-1986 (1st Cir. May 20, 2020).

See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
June 18, 2020